| | | |
|---|---|---|
| GLORIA STRAYHORN and JEREMY STRAYHORN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11-2058-STA-cgc |
| WYETH PHARMACEUTICALS, INC.; WYETH LLC; WYETH, INC.; PFIZER, INC.; SCHWARZ PHARMA, INC.; SCHWARZ PHARMA AG; UCB GmbH; ALAVEN PHARMACEUTICALS LLC; and ACTAVIS ELIZABETH LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| SARAH SPEED, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11-2095-STA-cgc |
| WYETH PHARMACEUTICALS, INC.; WYETH LLC; WYETH, INC.; PFIZER, INC.; SCHWARZ PHARMA, INC.; and WATSON LABORATORIES, INC., | ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| KATHLEEN SIMMONS, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11-2083-STA-cgc |
| WYETH PHARMACEUTICALS, INC.; | ) | |

1

**WYETH LLC; WYETH, INC.; PFIZER,** )
**INC.; SCHWARZ PHARMA, INC.;** )
**ALAVEN PHARMACEUTICAL, LLC;** )
**and WATSON LABORATORIES, INC.,** )
)
        **Defendants.** )

_____

**GORDON and JUDITH WEAVER;** )
**SHENA JOHNSON; DEAN BROWN;** )
**GWENDOLYN RUFF; EMMA** )
**KETRON; LARRY HUDSON; ANNA** )
**ODOM; MARILYN MONCIER;** )
**THELMA DONALD; NETTER** )
**GRIGGS; ORVIELL RHODES; SELMA** )
**CARTER; and GERTIE KING,** )
)
        **Plaintiffs,** )
)
**v.** )        **No. 11-2134-STA-cgc**
)
**WYETH PHARMACEUTICALS, INC.,** )
**Individually and d/b/a ESI LEDERLE,** )
**INC.; WYETH HOLDINGS, INC.;** )
**PFIZER, INC.; SCHWARZ PHARMA,** )
**INC.; SCHWARZ PHARMA AG;** )
**ALAVEN PHARMACEUTICALS LLC;** )
**TEVA PHARMACEUTICALS USA,** )
**INC.; TEVA PHARMACEUTICAL** )
**INDUSTRIES, LTD.; PLIVA, INC.;** )
**PLIVA, D.D.; BARR** )
**PHARMACEUTICALS LLC f/k/a BARR** )
**PHARMACEUTICALS, INC.; BARR** )
**LABORATORIES, INC.; DURAMED** )
**PHARMACEUTICALS, INC.; WATSON** )
**LABORATORIES, INC.; RANBAXY** )
**PHARMACEUTICALS, INC.; MUTUAL** )
**PHARMACEUTICAL COMPANY, INC.;** )
**UNITED RESEARCH LABORATORIES,** )
**INC. a/k/a URL PHARMPRO, LLC d/b/a** )
**URL PHARMA; ACTAVIS ELIZABETH** )
**LLC as successor in interest of PUREPAC** )
**PHARMACEUTICALS, INC.; ACTAVIS** )

**GROUP HF; GENERICS BIDCO I LLC** )
**d/b/a QUALITEST** )
**PHARMACEUTICALS; NORTHSTAR** )
**RX LLC; MCKESSON CORPORATION**)
**d/b/a NORTHSTAR RX LLC; THE** )
**HARVARD DRUG GROUP LLC d/b/a** )
**MAJOR PHARMACEUTICALS, INC.;** )
**and JOHN DOE DEFENDANTS,** )
)
      **Defendants.** )

---

**IRVING EVANS and PHYLLIS EVANS,** )
)
      **Plaintiffs,** )
)
**v.** )      **No. 11-2060-STA-cgc**
)
**WYETH PHARMACEUTICALS, INC.;** )
**WYETH LLC; WYETH, INC.; PFIZER,** )
**INC.; SCHWARZ PHARMA, INC.;** )
**ALAVEN PHARMACEUTICAL, LLC;** )
**PLIVA, INC.; BARR** )
**PHARMACEUTICALS, INC.;** )
**DURAMED PHARMACEUTICALS,** )
**INC.; and TEVA PHARMACEUTICALS** )
**USA, INC.,** )
)
      **Defendants.** )

---

**MICHAEL BROOKS and KAREN** )
**BROOKS,** )
)
      **Plaintiffs,** )
)
**v.** )      **No. 11-2059-STA-cgc**
)
**WYETH PHARMACEUTICALS, INC.;** )
**WYETH LLC; WYETH, INC.; PFIZER,** )
**INC.; SCHWARZ PHARMA, INC.;** )
**ALAVEN PHARMACEUTICALS LLC;** )
**PLIVA, INC.; BARR** )

3

PHARMACEUTICALS, INC.;              )
DURAMED PHARMACEUTICALS,           )
INC.; TEVA PHARMACEUTICALS         )
USA, INC.; and ACTAVIS             )
ELIZABETH LLC,                     )
                                   )
      Defendants.              )

_____

ALTONA BAIN and WILLIAM BAIN;      )
RUBY RUNIONS; DIANE MORPHIS        )
and HOLLIS MORPHIS; BENNY          )
ADAMS, Individually and as Legal   )
Guardian of MARY ADAMS;            )
CAROLYN CHURCHWELL; MARY           )
RICHMOND; VELMA MAYBERRY           )
and NATHAN MAYBERRY; CARRIE        )
WILLIAMS and NATHANIEL             )
WILLIAMS,                          )
                                   )
      Plaintiffs,              )
                                   )
v.                                 )      No. 11-2145-STA-cgc
                                   )
WYETH PHARMACEUTICALS, INC.,       )
Individually and d/b/a ESI LEDERLE,)
INC.; WYETH LLC; WYETH, INC.;      )
WYETH HOLDINGS, INC.; PFIZER,      )
INC.; SCHWARZ PHARMA, INC.;        )
SCHWARZ PHARMA AG; ALAVEN          )
PHARMACEUTICALS LLC; TEVA          )
PHARMACEUTICAL INDUSTRIES,         )
LTD.; PLIVA, INC.; PLIVA, D.D.; BARR)
PHARMACEUTICALS, INC.; BARR        )
LABORATORIES, INC.; DURAMED        )
PHARMACEUTICALS, INC.; ACTAVIS)
ELIZABETH LLC as successor in interest)
of PUREPAC PHARMACEUTICALS,        )
INC.; ACTAVIS GROUP HF;            )
NORTHSTAR RX LLC; MCKESSON         )
CORPORATION d/b/a NORTHSTAR        )
RX LLC; and JOHN DOE               )
DEFENDANTS,                        )

---

## ORDER GRANTING BRAND NAME DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Before the Court are the Brand Name Defendants' separate Motions for Summary Judgment, all filed on February 10, 2012.  Plaintiffs have responded in opposition to Defendants' Motions, and Defendants have filed reply briefs.  For the reasons set forth below, the Brand Name Defendants' Motions are **GRANTED**.

## BACKGROUND

### I. Procedural History

Seven cases involving Defendant Wyeth LLC ("Wyeth") and the other pharmaceutical companies identified in this Order are currently pending before the Court.  These cases revolve around Plaintiffs' injuries arising from their ingestion of the brand-name drug Reglan® or its generic version, metoclopramide.[1]  The Court will discuss the various Defendants in these cases below, but it will collectively refer to those manufacturing, distributing, marketing, selling, labeling, or designing Reglan as "the Brand Name Defendants." Plaintiffs' Amended Complaint contains identical claims in each of these seven cases.  Moreover, the briefing on the Brand Name Defendants' Motions for Summary Judgment is identical in each case.  Therefore, the Court finds that the legal issues presented in each case are identical and can be addressed in a single order.

---

[1] Defendants' briefing refers to the brand name drug as "Reglan®," indicating that the brand name is trademark protected.  For the sake of simplicity and consistency, the Court will refer to the drug as "Reglan" without the trademark symbol but with the understanding that reference is made to the brand name drug.

Accordingly, unless otherwise indicated, the Court will refer to the docket entry and page numbers in *Rhodes v. Wyeth*, No. 11-2134.

The Court will briefly review the different parties in each case as named in the Amended Complaint and will discuss any parties which have been dismissed. In the matter of *Strayhorn v. Wyeth*, No. 11-2058, the Brand Name Defendants include Wyeth Pharmaceuticals, Inc., Wyeth LLC, Wyeth, Inc. (collectively "Wyeth"); Pfizer, Inc.; Schwarz Pharma, Inc. and Schwarz Pharma AG (collectively "Schwarz"); UCB GmbH; and Alaven Pharmaceuticals LLC ("Alaven"). The sole Generic Defendant in *Strayhorn* is Actavis Elizabeth LLC ("Actavis"). None of these Defendants have been dismissed. The Brand Name Defendants seek summary judgment on all claims raised against them by Plaintiffs (*Strayhorn*, No. 11-2058, D.E. # 93).

In *Brooks v. Wyeth*, No. 11-2059, Wyeth, Pfizer, Schwarz, and Alaven are the Brand Name Defendants. The Generic Defendants include PLIVA, Inc. ("PLIVA"); Barr Pharmaceuticals, Inc. ("Barr"); Duramed Pharmaceuticals, Inc. ("Duramed"); TEVA Pharmaceuticals USA, Inc. ("TEVA"); and Actavis. The Brand Name Defendants seek summary judgment on all claims raised against them by Plaintiffs (*Brooks*, No. 11-2059, D.E. # 121).

In *Evans v. Wyeth*, No. 11-2060, the Brand Name Defendants are Wyeth, Pfizer, Schwarz, and Alaven, and the Generic Defendants are PLIVA, Barr, Duramed, and Teva. Plaintiffs dismissed their claims without prejudice as to Brand Name Defendant Alaven on January 19, 2012. (*Evans*, No. 11-2060, D.E. # 105.) The remaining Brand Name Defendants seek summary judgment on all claims raised against them by Plaintiffs (D.E. # 112).

In *Simmons v. Wyeth*, No. 11-2083, the Brand Name Defendants are Wyeth, Pfizer, Schwarz, and Alaven, and the sole Generic Defendant is Watson Laboratories, Inc. ("Watson"). The Brand Name Defendants seek summary judgment on all claims raised against them by Plaintiffs (*Simmons*, No. 11-2083, D.E. # 86).

In *Speed v. Wyeth*, No. 11-2095, the Brand Name Defendants include Wyeth, Pfizer, and Schwarz; the sole Generic Defendant is Watson. The Brand Name Defendants seek summary judgment on all claims raised against them by Plaintiffs (*Speed*, No. 11-2095, D.E. # 81).

In *Rhodes v. Wyeth*, No. 11-2134, the Brand Name Defendants are Wyeth, Pfizer, Schwarz, and Alaven. The Generic Defendants are Teva, PLIVA, Barr, Duramed, Watson, Ranbaxy Pharmaceuticals, Inc. ("Ranbaxy"), Mutual Pharmaceutical Company ("Mutual"), United Research Laboratories, Inc. ("URL"), Actavis, Generics Bidco I LLC ("Generics Bidco"), Northstar RX, LLC ("Northstar"), McKesson Corporation ("McKesson"), and The Harvard Drug Group. On June 16, 2011, Plaintiffs Gordon and Judith Weaver, Shena Johnson, Dean Brown, Emma Ketron, Larry Hudson, Anna Odom, Marilyn Moncier, Thelma Donald, Netter Griggs, Orviell Rhodes, Selma Carter, and Gertie King filed a Stipulation of Dismissal with prejudice as to all of their claims against Generic Defendants Mutual and URL. (D.E. # 102.) However, the same subset of Plaintiffs also filed a Notice of Voluntary Dismissal with Prejudice as to Generic Defendants Mutual and URL on June 27, 2011.[2] (D.E. # 109.) On January 20, 2012, Plaintiffs Thelma Donald, Shena Johnson, and Emma Ketron and Brand Name Defendant Alaven filed a Stipulation of Dismissal dismissing all of these Plaintiffs' claims against Alaven without prejudice. (D.E. # 184.) Additionally, Plaintiff

---

[2] The Court expresses no opinion on this dual Stipulation of Dismissal and Notice of Voluntary Dismissal of the same Generic Defendants. After all, both Dismissals were with prejudice.

Emma Ketron and Brand Name Defendant Schwarz filed a Stipulation of Dismissal dismissing this Plaintiff's claims against Schwarz without prejudice. (D.E. # 185.) The remaining Brand Name Defendants seek summary judgment against all remaining Plaintiffs except Plaintiff Orviell Rhodes (D.E. # 198).

Finally, in *Bain v. Wyeth*, No. 11-2145, the Brand Name Defendants are Wyeth, Pfizer, Schwarz, and Alaven. The Generic Defendants are Teva, PLIVA, Barr, Duramed, Watson, Ranbaxy, Mutual, URL, Actavis, Northstar, and McKesson. On February 23, 2012, Plaintiffs Altona and William Bain, Diane and Hollis Morphis, Carolyn Churchwell, Mary Richmond, Velma and Nathan Mayberry, and Carrie and Nathaniel Williams and Generic Defendant Northstar filed a Stipulation of Dismissal dismissing all of these Plaintiffs' claims against Northstar without prejudice (*Bain*, No. 11-2145, D.E. # 166.). The Brand Name Defendants seek summary judgment on all claims raised against them by Plaintiffs (*Bain*, No. 11-2145, D.E. # 158).

## II. Factual Background

The following facts are not in dispute for purposes of the Brand Name Defendants' separate Motions for Summary Judgment unless otherwise noted. Metoclopramide is a prescription drug approved by the FDA to treat, among other things, gastroesophageal reflux disease and diabetic gastroparesis. (Defs.' Statement of Undisputed Fact ¶ 1.) Metoclopramide is available in both brand-name (Reglan) and generic formulations. (*Id.* ¶ 2.) Through its subsidiaries, Wyeth manufactured and distributed brand-name Reglan tablets until late 2001, at which point it sold the rights concerning Reglan tablets to Schwarz Pharma, Inc. (*Id.* ¶ 3.) Wyeth manufactured and distributed Reglan syrup from approximately 1989 until 2001, but ceased production of the syrup in late December 2001. (*Id.* ¶ 4.) Wyeth also manufactured and distributed an injectable form of

Reglan until December 2002, at which point it sold the NDA for that product to Baxter Healthcare Corporation. (*Id.* ¶ 5.)  Wyeth has now been out of the Reglan business entirely for nearly a decade. (*Id.* ¶ 6.)  Plaintiffs dispute this assertion, arguing that Wyeth has continued to hold Reference Label Status through the Food and Drug Administration ("FDA").  (Pls.' Resp. to Statement of Undisputed Fact ¶ 6.)

Schwarz Pharma, Inc. manufactured and distributed Reglan tablets from 2001 until it sold the rights to Reglan to Alaven Pharmaceuticals, LLC in February 2008. (Defs.' Statement of Undisputed Fact ¶ 7.)  From February 2008 until June 2009, Schwarz manufactured Reglan tablets for Alaven. (*Id.*)  Alaven distributed and/or sold Reglan tablets from 2008 until 2011, when it sold the rights to Reglan tablets to ANI Pharmaceuticals, Inc. (*Id.* ¶ 8.)

Since the mid-1980s, several companies—including the generic manufacturers sued by Plaintiffs here—have manufactured and distributed generic metoclopramide. (*Id.* ¶ 9.)  Plaintiffs in this case never took Reglan; rather, they ingested only generic metoclopramide manufactured by companies other than Brand Name Defendants.  (*Id.* ¶ 10.)  Alleging that generic metoclopramide caused them to develop neurological problems, Plaintiffs sued both the companies that manufactured the metoclopramide they took and the Brand Name Defendants. (*Id.* ¶ 11.)

The Amended Complaint generally alleges that the Brand Name Defendants had a duty at all times to ensure that Reglan's labeling was accurate.  (Am. Compl. ¶¶ 30, 40, 48.)  The Brand Name Defendants failed to publish any warnings to the medical community, either directly or through the Physicians Desk Reference, after 2002.  (*Id.*)  Plaintiffs further allege that the Brand Name Defendants had actual and constructive knowledge of the dangerous nature of Reglan and of the fact that doctors often over-prescribed Reglan or generic metoclopramide for uses that were not

safe. (*Id.* ¶¶ 31–32, 36–38.) Based on these and other factual contentions, the Amended Complaint

alleges the following causes of action: strict liability (Count I); strict liability - design defect (Count

II); negligence (Count III); negligence *per se* (Count IV); fraud, misrepresentation, and suppression

(Count V); constructive fraud (Count VI); breach of express and implied warranties (Count VII);

unfair and deceptive trade practices/conspiracy (Count VIII); unjust enrichment (Count IX);

conscious or negligent misrepresentation involving physical harm (Count X); civil conspiracy (Count

XI); loss of consortium (Count XII); wrongful death (Count XIII); and survival action (Count XIV).[3]

In their Motions for Summary Judgment, the Brand Name Defendants make the same

straightforward argument that Plaintiffs who did not take brand name Reglan cannot hold the Brand

Name Defendants liable for their alleged injuries. The Brand Name Defendants cannot be liable to

these Plaintiffs because the Brand Name Defendants did not manufacture or sell the product that

injured Plaintiffs. The Brand Name Defendants emphasize that the Tennessee Products Liability Act

("the TPLA" or "the Act") governs all of Plaintiffs' claims, regardless of the labels Plaintiffs attach

to their causes of action. The Act, however, allows recovery for a product defect only against the

---

[3] The Brand Name Defendants assert that the gravamen of the Amended Complaint is
their purported misrepresentation about the health risks of Reglan and their failure to advise
Plaintiffs and their physicians of the drug's potential side effects. (Defs. Statement of Facts ¶
12.). In response Plaintiffs argue that Defendants have overly simplified their theories of
recovery as merely "misrepresentation" and "failure to advise." (Pls.' Resp. to Statement of Fact
¶ 12.) The Court has some doubt as to whether the gravamen of the pleadings is a question of
fact appropriate for treatment as an undisputed factual contention at summary judgment. *E.g.
Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012)
("Determining the 'gravamen of the complaint' is a question of law.") (other citation omitted).
The Court has considered the gravamen of the Amended Complaint more fully below and in its
Order on the Motion to Dismiss, which is being entered contemporaneously with this Order. For
purposes of this Motion, the Court finds the better course is simply to recite the labels Plaintiffs
have attached to their causes of action and then analyze the gravamen of the pleadings as a
question of law.

manufacturer or seller of the product. The Brand Name Defendants did not sell or manufacture the generic form of the drug, and Plaintiffs took only generic metoclopramide. It follows that Plaintiffs have no claim against the Brand Name Defendants. The Brand Name Defendants rely on a body of case law from many jurisdictions, including the Sixth Circuit and other district courts within the Sixth Circuit. Based on this authority, the Brand Name Defendants seek judgment as a matter of law on all claims against them brought by Plaintiffs who never took Reglan.

Plaintiffs have responded in opposition to the Brand Name Defendants' Rule 56 Motions. Plaintiffs attempt to clarify their theory of recovery in this suit, explaining that their claims against the Brand Name Defendants are premised not on defects in the product itself but on "the inaccurate and insufficient information promulgated by [the Brand Name Defendants] and by which the drug was prescribed." (Pls.' Resp. to Mot. Summ. J. 2 (D.E. # 213).) Elsewhere, Plaintiffs elaborate: "The argument is not that Defendants' product caused Plaintiffs harm, but rather that their dissemination of false and misleading information in labeling and the Physicians' Desk Reference (PDR), which they knew would be relied upon by the generic manufacturers in generating their own labels, was the direct and proximate cause of Plaintiffs' injuries." *Id.* at 3. Reiterating the factual predicates set forth in the Amended Complaint, Plaintiffs go on to cite the FDA regulatory scheme for pharmaceutical drugs, which permits the generic manufacturers of drug to rely on the research and labeling produced by the brand name manufacturer of the drug. Plaintiffs argue that the Brand Name Defendants here knew about the risks of their drug and yet failed to update warning labels and information about Reglan even though the Brand Name Defendants knew the medical community as well as companies manufacturing the generic form of the drug were relying on outdated

information about the drug.  Based on these allegations, Plaintiffs contend that the Brand Name Defendants breached their duty to provide adequate warnings.

As for Defendants' arguments in support of summary judgment, Plaintiffs deny that the TPLA applies to such a claim.  Instead, Plaintiffs maintain that theirs are claims for negligent and fraudulent misrepresentation under section 552 of the Restatement (Second) of Torts and for breach of warranty under the Tennessee UCC.  Because their claims are not based on the TPLA, Plaintiffs argue that the Brand Name Defendants' Motions should be denied.

In their reply, the Brand Name Defendants emphasize that Plaintiffs have failed to refute Defendants' primary argument that the TPLA controls and bars Plaintiffs' claims against the Brand Name Defendants.  Plaintiffs have alleged no injury caused by a product sold or manufactured by the Brand Name Defendants.  Defendants further contend that even if Plaintiffs have claims for misrepresentation independent of the TPLA, Plaintiffs cannot prove that the Brand Name Defendants owed them a duty of care.  Dozens of other cases from other jurisdictions have adopted this very approach.  According to the Brand Name Defendants, the California case on which Plaintiffs rely is "an extreme outlier" on the issue of a brand name pharmaceutical company's duty to a consumer of a generic drug.  Therefore, the Court should grant the Brand Name Defendants' judgment as a matter of law against all Plaintiffs who did not take Reglan.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law.[4]  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.[5]  When the motion is supported by documentary proof such as depositions and affidavits, the non-moving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[6]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[7]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[8]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[9]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]  In this Circuit, "this requires the nonmoving party to 'put up or

---

[4] Fed R. Civ. P. 56(a); *see Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[5] *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[6] *Celotex*, 477 U.S. at 324.

[7] *Matushita*, 475 U.S. at 586.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[9] *Id.*

[10] *Celotex*, 477 U.S. at 322.

shut up' [on] the critical issues of [his] asserted causes of action."[11]  Finally, the "judge may not

make credibility determinations or weigh the evidence."[12]

## ANALYSIS

The Court holds that the Brand Name Defendants are entitled to judgment as a matter of law

on any and all claims raised against them by Plaintiffs who did not ingest or take their product.[13]  In

the case at bar, Plaintiffs have alleged causes of action against the Brand Name Defendants under

a number of different theories, all based on Defendants' alleged failures to warn or their

misrepresentations about Reglan.  Plaintiffs concede, however, that they did not take Reglan or any

---

[11] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[12] *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 560 (6th Cir. 2012); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[13] The Brand Name Defendants note in their reply brief that Plaintiffs' responses have failed to address a number of the claims on which Defendants seek summary judgment, including unfair trade practices, conspiracy, unjust enrichment, and civil conspiracy.  Under the circumstances, Defendants request that the Court dismiss this claims as abandoned.  That request is granted.  District courts in this Circuit routinely grant summary judgment as to claims a plaintiff fails to support or address in a response to a motion for summary judgment.  *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011); *Anglers of the Au Sable v. U.S. Forest Serv.,* 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008)*; Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999).  *See also Clark v. City of Dublin,* No. 05-3186, 2006 WL 1133577, at *3 (6th Cir. Apr. 27, 2006) (where the appellant did not properly respond to the arguments asserted against his ADEA and ADA claims by the appellees in their motion for summary judgment, the appellant had abandoned his ADEA and ADA  claims); *Conner v. Hardee's Food Sys.,* No. 01-5679, 2003 WL 932432, at *4 (6th Cir. Mar. 6, 2003) (finding that, "Because Plaintiffs failed to brief the issue before the district court . . . Plaintiffs abandoned their . . . claim."); *Hazelwood v. Tenn. Dep't of Safety*, No. 3:05-cv-356, 2008 WL 3200720, at *8 (E.D. Tenn. Aug. 5, 2008).  For this reason, Defendants' Motion for Summary Judgment are **GRANTED** as to all of Plaintiffs' unsupported claims against the Brand Name Defendants.

product manufactured by the Brand Name Defendants.  For these reasons, Plaintiffs simply argue that theirs are not products liability actions and the TPLA does not apply to their claims.

The Court disagrees and holds that the TPLA governs all of the claims the Amended Complaint states against the Brand Name Defendants.[14]  The Act defines "product liability action" broadly to include

> all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, *warning*, instruction, marketing, *packaging or labeling of any product*. It shall include, but not be limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; *or under any other substantive legal theory in tort or contract whatsoever*.[15]

Courts applying Tennessee law have routinely held that the term "products liability action" is cast so expansively as to cover claims related to a defective product under legal theories of many kinds, whether sounding in negligence, misrepresentation, or breach of warranty.[16]  The Court holds that the TPLA's definition of a "products liability action" easily captures Plaintiffs' allegations against the Brand Name Defendants.  It is beyond dispute that Plaintiffs claims are "brought for or on

---

[14] It is undisputed that Tennessee substantive law applies to Plaintiffs' claims.  The Court is bound to apply the substantive law of Tennessee as if the action had been brought in the courts of that state.  *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

[15] Tenn. Code Ann. § 29–28–102(6) (emphasis added).

[16] *E.g. Maness v. Boston Scientific*, 751 F. Supp. 2d 962, 967 (E.D. Tenn. 2010); *Woods v. Remington Arms Co., Inc.*, 3:08-CV-363, 2010 WL 2010850 (E.D. Tenn. May 19, 2010); *Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 868 (W.D. Tenn. 2006); *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 967 (M.D. Tenn. 2002); *Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 886-87 (W.D. Tenn. 1999); *Elec. Power Bd. of Chattanooga v. Westinghouse,* 716 F. Supp. 1069, 1073 (E.D. Tenn. 1988).

account of personal injury . . . caused by or resulting from the . . . warning, instruction, marketing, packaging or labeling of any product."[17]  Furthermore, Plaintiffs' theories include "strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent. . . ."[18]  Plaintiffs' other claims for constructive fraud, unfair and deceptive trade practices, conspiracy, unjust enrichment, and civil conspiracy obviously qualify as "any other substantive legal theory in tort."[19]  Therefore, the Court concludes that Plaintiffs have brought a "products liability action," as the TPLA defines the term, against the Brand Name Defendants.

Having established that Plaintiffs assert products liability claims, the Court holds that Plaintiffs have no cause of action against the Brand Name Defendants.  The Sixth Circuit recently held that "a threshold requirement of any products-liability claim is that the plaintiff assert that the defendant's product caused the plaintiff's injury."[20]  Here Plaintiffs concede that they never took

---

[17] Tenn. Code Ann. § 29–28–102(6).

[18] *Id.*

[19] *Id.*

[20] *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011) (applying Kentucky law).  *See also Barnes v. The Kerr Corp.*, 418 F.3d 583, 589 (6th Cir. 2005) (applying Tennessee law and affirming summary judgment for manufacturer of dental amalgams containing mercury where plaintiff could not show that the manufacturer's product or warning was the proximate cause of his injuries related to mercury exposure); *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2008 WL 5377886, at *1 (M.D. Tenn. Dec. 2, 2008) ("A fundamental principle of traditional product liability law is that the plaintiff must prove that the defendant supplied the product which caused the injury."); *Travelers Indem. Co. v. Indus. Paper & Packaging Corp.*, No.3:02-CV-491, 2006 WL 2050686, at *10 (E.D. Tenn. July 19, 2006).  *Accord In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, No. 2:11-md-2226-DCR, 2012 WL 716132, at *2 (E.D. Ky. Mar. 5, 2012) ("There is no theory of product liability under which a defendant can be

Reglan itself, only its generic form metoclopramide, a pharmaceutical the Brand Name Defendants did not manufacture or sell. As such, Plaintiffs cannot prove that any act or omission of the Brand Name Defendants proximately caused their injuries.[21]

The Court finds the Sixth Circuit's recent decision in *Smith v. Wyeth, Inc.* to be directly on point. In *Smith*, the Sixth Circuit affirmed the dismissal of claims brought by plaintiffs, who like Plaintiffs in this case, took the generic metoclopramide but did not take Reglan itself. Like Plaintiffs here, the *Smith* plaintiffs brought suit against Wyeth, Inc. and Schwarz-Pharma, Inc., the manufacturers and sellers of brand name Reglan. Just as these Plaintiffs have, the *Smith* plaintiffs alleged a series of tort claims against the brand name defendants sounding in fraud and misrepresentation and based on the contention that "Reglan's label and corresponding entry in the Physician's Desk Reference falsely and misleadingly represented the risks associated with long-term use of metoclopramide."[22] The Sixth Circuit adopted the majority approach on this issue and "reject[ed] the argument that a name brand drug manufacturer owes a duty of care to individuals who have never taken the drug actually manufactured by that company."[23] In doing so, the Sixth Circuit specifically declined to follow the minority view set forth in *Conte v. Wyeth, Inc.*, a case on which

---

held liable for an injury caused by a product that it did not sell, manufacture, or otherwise supply to the plaintiff.").

[21] *Smith*, 657 F.3d at 423-24 ("As the district court observed, adopting [the plaintiffs'] theory of liability would require the court to attribute any deficiency in a name-brand manufacturer's labeling and marketing of its products to products manufactured by its generic competitors.").

[22] *Id.* at 422 (noting that the Smith plaintiffs had alleged claims against the name-brand manufacturers for "state-law fraud, fraudulent concealment, and negligent misrepresentation").

[23] *Id.* at 424 (describing *Foster v. Am. Home Prods., Corp.*, 29 F.3d 165 (4th Cir. 1994) as the "leading case" on this subject) (other citations omitted).

Plaintiffs here rely heavily.[24]  Plaintiffs have failed to show why the Sixth Circuit's holding in *Smith* involving Reglan and virtually identical legal theories based on inadequate warnings and labels for Reglan should not control in this case.

It is true that the Sixth Circuit applied Kentucky law in *Smith* and that this Court is bound to apply the substantive law of Tennessee in this case.[25]  After declining to recognize a theory of liability based on the brand name manufacturers' failure to warn the consumers of a generic drug, the *Smith* court further concluded that "most significantly, the plaintiffs have not convinced us that the state courts of Kentucky would adopt their vicarious-liability argument under the Kentucky Products Liability Act."[26]  Likewise, Plaintiffs in the case at bar have not shown that the state courts of Tennessee would recognize such a theory under the TPLA.  On the contrary, the Sixth Circuit has concluded that a product manufacturer has no duty under Tennessee law to warn of the dangers of another manufacturer's products.[27]  Therefore, the Court holds that the Brand Name Defendants are entitled to judgment as a matter of law on Plaintiffs' claims.

As previously discussed, Plaintiffs' response briefing fails to support all of their different causes of action.  Plaintiffs do maintain that they have valid claims for fraudulent and negligent

---

[24] *Id.* (citing *Conte v. Wyeth, Inc.*, 85 Cal. Rptr. 3d 299, 313 (2008)).  Plaintiffs have discussed *Conte* at length in their opposition to the Motions for Summary Judgement.  *See* Pls.' Resp. in Opp'n 20-22.  Plaintiffs have not shown, however, why this Court should follow the reasoning adopted in *Conte* and reject the Sixth Circuit's holding.

[25] *Corrigan*, 478 F.3d at 723.

[26] *Smith*, 657 F.3d at 424.

[27] *See Barnes*, 418 F.3d at 590 ("Although a product manufacturer generally has a duty to warn of the dangers of its own products, it does not have a duty to warn of the dangers of another manufacturer's products.").

misrepresentation as well as breach of warranty, the TPLA notwithstanding. Even if the Court considered these claims apart from the TPLA, Plaintiffs have relied on inapposite law to salvage these causes of action. For example, Plaintiffs assert that their claims for negligent and fraudulent misrepresentation are based on Restatement (Second) of Torts § 552. The Court finds, however, that Plaintiffs' reliance on § 552 is misplaced. The Tennessee Supreme Court has adopted § 552 to apply only to negligent misrepresentation, and not fraudulent misrepresentation.[28] Moreover, the Tennessee Supreme Court has declined to apply § 552 at all in products liability actions.[29] Thus, the Court holds that § 552 is inapplicable to Plaintiffs' misrepresentation claims against the Brand Name Defendants.

Similarly, Plaintiffs' claims for breach of warranty find no support under the Tennessee UCC. Plaintiffs argue that Tenn. Code Ann. § 47-2-313 provides a cause of action for breach of express warranty and that § 47-2-314 creates a similar claim for breach of implied warranty. Plaintiffs further contend that § 47-2-318 extends these warranties to any natural person who may reasonably be expected to consume the goods and who suffers an injury by the breach of warranty, thereby making privity of contract unnecessary. Plaintiffs argue that the Brand Name Defendants are liable to them for breach of both warranties. However, Plaintiffs fail to recognize that the UCC warranty

---

[28] *John Martin Co., Inc. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991). More recently, the Tennessee Supreme Court adopted Restatement (Second) of Torts § 533 as Tennessee's law on fraudulent misrepresentation. *Davis v. McGuigan*, 325 S.W.3d 149, 159 (Tenn. 2010). Prior to *Davis*, the Tennessee Supreme Court had "recognized three distinct actions in tort based on misrepresentation: fraud and deceit; strict liability under Section 402B of the Restatement (Second) of Torts (1965); and negligent misrepresentation under Section 552 of the Restatement." *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995). Plaintiffs have briefed none of these alternative grounds at summary judgment, and so the Court declines to consider them here.

[29] *Ritter*, 912 S.W.2d at 132 (citing *John Martin Co.*, 819 S.W.2d at 431).

provisions impose liability only on the seller of the goods.[30]  The undisputed fact remains in this case

that the Brand Name Defendants did not sell the goods which allegedly caused injuries to Plaintiffs.

For these reasons, the Court holds that Tennessee's UCC does not create for Plaintiffs an alternative

theory of relief against the Brand Name Defendants.

Finally, even if the Sixth Circuit's holding in *Smith* did not control this case, the Court would

still decline to recognize the legal theory on which Plaintiffs base their claims against the Brand

Name Defendants.  Plaintiffs have failed to show that the Tennessee courts would embrace

Plaintiffs' theory, holding a brand name pharmaceuticals manufacturer liable for injuries caused by

the generic form of a drug.  Plaintiffs essentially ask the Court to recognize a new legal theory under

Tennessee law that could conceivably apply to any manufacturer of a brand name drug.  The Sixth

Circuit has cautioned that without guidance from a state's highest court, a federal court sitting in

diversity should be reluctant to expand the substantive law of that state.[31]  This is because "federal

courts sitting in a diversity case are in a particularly poor position to endorse a fundamental policy

innovation."[32]  In short, "given a choice between an interpretation of state law which reasonably

restricts liability, and one which greatly expands liability, we should choose the narrower and more

---

[30] *See* Tenn. Code Ann. § 47-2-313(1) ("Express warranties *by the seller* are created as follows . . . ."); § 47-2-314(1) ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale *if the seller* is a merchant with respect to goods of that kind."); § 47-2-318 ("*A seller's warranty* whether express or implied extends to any natural person . . . ." and "[a] *seller* may not exclude or limit . . . .") (emphasis added)).

[31]  *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 577 (6th Cir. 2004).

[32] *Id.* at 577-78 (internal quotation marks and brackets omitted).

reasonable path."[33]  The Court finds that Plaintiffs' theory of liability as to brand name pharmaceuticals manufacturers is not only an extreme minority position but also would mark a "fundamental policy innovation" under Tennessee law.  In the absence of any legal authority from the state courts of Tennessee, the Court is poorly situated to announce a new rule of Tennessee substantive law on this issue.  For this additional reason, the Brand Name Defendants are entitled to judgment as a matter of law on any and all claims brought by Plaintiffs who did not take Reglan.

## CONCLUSION

The Court holds that the TPLA governs all of Plaintiffs' claims against the Brand Name Defendants.  The Brand Name Defendants are entitled to judgment as a matter of law because these Defendants did not sell or manufacture the product allegedly causing Plaintiffs' injuries.  Therefore, the Brand Name Defendants' Motions for Summary Judgment are **GRANTED**.

Based on the Court's rulings on the dispositive motions in these cases, only claims against the Brand Name Defendants brought by Plaintiffs who took brand name Reglan survive.  However, it is not clear to the Court which Plaintiff(s) continue to have viable claims.  As such, the parties are directed to confer and file a status report in each case within fourteen (14) days of the entry of these Orders.  The status reports should indicate which Plaintiff(s) continue to have viable claims against the Brand Name Defendants and attach the short form complaint for such Plaintiff(s).  In the event no claims have survived in a given case, the parties' report should indicate that no further court action is needed, and entry of judgment will follow.

---

[33] *Id.* (quoting *Todd v. Societe Bic, S.A.,* 21 F.3d 1402, 1412 (7th Cir. 1994) (internal quotation marks and ellipsis omitted)).

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 8, 2012.